

**Your Missouri Courts**    .net

Judicial Links | eFiling | Help | Contact Us | Print     GrantedPublicAccess Logoff ERICDBLOCK86

Search for Cases by: [ Select Search Method... ▼ ]

**17SL-CC04213 - MONSANTO COMPANY V BETH HOLMES (E-CASE)**

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

This information is provided as a service and is not considered an official court record.

**Click here to eFile on Case**
**Click here to Respond to Selected Documents**

Sort Date Entries: ● Descending ○ Ascending    Display Options: [ All Entries ▼ ]

**11/29/2017**   ☐ **Summons Issued-Circuit**
Document ID: 17-SMCC-9613, for HOLMES, BETH. Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**11/20/2017**   ☐ **Motion Special Process Server**
Request for Appointment of Process Server. APPROVED 11-29-2017
   Filed By: CLIFFORD ALAN GODINER
   On Behalf Of: MONSANTO COMPANY

☐ **Judge/Clerk - Note**
NO SUMMONS ISSUED DUE TO MISSING SERVICE FEES. SERVICE FEES = $36.00 PER DFT. PLEASE E-FILE A SERVICE MEMO WITH THE MISSING ($36.00) SERVICE FEES ATTACHED SO THAT YOUR SUMMONS CAN BE ISSUED.

☐ **Filing Info Sheet eFiling**
   Filed By: CLIFFORD ALAN GODINER

☐ **Pet Filed in Circuit Ct**
Verified Petition; Exhibit A; Exhibit B.
   On Behalf Of: MONSANTO COMPANY

☐ **Judge Assigned**
DIV 19

Case.net Version 5.13.16.6     Return to Top of Page     Released 06/08/2017

17SL-CC04213

electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | |
|---|---|
| MONSANTO COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **INJUNCTIVE RELIEF REQUESTED** |
| v. | ) |
| | ) **Cause No.** |
| DR. BETH HOLMES, | ) |
| Serve:  309 Bristol Ct. | ) **Division No.** |
| Ballwin, MO  63011 | ) |
| | ) |
| Defendant. | ) |

## VERIFIED PETITION

COMES NOW Plaintiff Monsanto Company ("Monsanto") and for its causes of action

against Defendant Dr. Beth Holmes, alleges and states as follows:

## INTRODUCTION AND SUMMARY

1.      In this Verified Petition, Monsanto seeks, inter alia, temporary, preliminary, and

permanent injunctive relief to enforce promises made by Defendant Dr. Beth Holmes in an

Employment Agreement (the "Agreement") executed by Defendant.  That Employment

Agreement included certain non-compete obligations ("Non-Compete Promises").  Dr. Holmes

recently notified Monsanto that she was resigning from its employment to accept employment

with Calyxt Inc. ("Calyxt"), a Monsanto competitor, to perform work that will place her in

violation of her Non-Compete Promises.  If allowed to work for Calyxt in her anticipated role,

Defendant will breach promises made in the Agreement and will cause Monsanto irreparable

harm.  Under the Agreement, Defendant agreed that, if Monsanto elected to enforce the Non-

Compete Promises, she would not, for a period of one year after leaving Monsanto's employ,

engage in or contribute her knowledge to any work or activity involving any product competitive

6655362

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

or similar to a product that she worked on with Monsanto or which she had access to confidential information during her last five years of employment.  Calyxt and Monsanto compete throughout the United States, and because of the nature of Defendant's work for Monsanto and her expected work for Calyxt, Defendant's employment with Calyxt would directly violate the Non-Compete Promise.  Monsanto is therefore entitled to specific performance of Defendant's promises as well as the other relief specified herein.  Monsanto is so concerned about the irreparable harm that Defendant could do by breaching her obligations to Monsanto that it will continue her pay during the one-year period of the Non-Compete Promises as specified in her Employment Agreement.

## PARTIES, JURISDICTION, AND VENUE

2.      Monsanto is a corporation duly formed and existing under the laws of the State of Delaware with its principal place of business in St. Louis County, State of Missouri, within this judicial district.

3.      Defendant Dr. Beth Holmes is a citizen of the State of Missouri and resides in Ballwin, Missouri.  Venue is thus appropriate in St. Louis County Circuit Court.  Until recently, Defendant was employed by Monsanto as the Trait Analytics and Decision Science Lead in Chesterfield, Missouri.

## FACTS COMMON TO ALL COUNTS

### Monsanto's Business

4.      Monsanto is in the business of researching, developing, testing, registering, manufacturing, marketing, and selling advanced agricultural products worldwide.  Monsanto develops and sells, for example, conventional, hybrid, and genetically modified corn, soybeans, cotton, alfalfa, wheat, and vegetable seeds and well as microbial, chemical, and digital tools and

6655362

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

products.  These products provide additional yield and are designed to grow in specific soil and environmental conditions, grow products with specific useful traits, and/or be resistant to herbicides, insects, diseases, droughts, and other conditions.

5.      In order to remain competitive, Monsanto is continuously researching, developing, testing, registering, manufacturing, marketing, and selling new and improved seeds.

6.      Monsanto is recognized as the industry leader in the development and sale of advanced seeds.  However, the industry is highly competitive, and there are numerous other companies attempting to research, test, develop, and bring to market products that compete with Monsanto's products.

7.      One of Monsanto's competitors is Calyxt.  Like Monsanto, Calyxt develops, produces, registers, manufactures, markets, and sells advanced seeds.

8.      Calyxt and Monsanto compete vigorously with regard to the advanced seed business in the United States.  Calyxt and Monsanto compete not only to have superior products, intellectual property, and trade secrets, but also compete in a "first to market" manner, each attempting to develop, test, and obtain necessary approvals for new products in the fastest, most responsible manner.  Whichever company is first in the market can gain a tremendous competitive advantage.  Even a matter of a few months can be critical to the success or failure of a product.

## Monsanto's Trade Secrets

9.      In connection with its business, Monsanto has developed numerous trade secrets, including but not limited to detailed scientific and business information relating to modifications of seeds, seed testing data, technical information, and test results regarding the composition, food

6655362                                    - 3 -

Electronically Filed - St. Louis County - November 20, 2017 - 02:35 PM

and feed safety, and performance of certain current and future products, strategies for obtaining regulatory approvals, seed production, and marketing and sales plans and strategies (collectively, the "Trade Secrets").  Monsanto has specifically developed Trade Secrets for every Region in the world.

10.    The Trade Secrets give Monsanto a significant competitive advantage not enjoyed by other companies, such as Calyxt, that are not in possession of said Trade Secrets, and enable Monsanto to develop and sell products faster and that perform better than those of its competitors.

11.    Monsanto's Trade Secrets are not generally known to, or readily ascertainable through proper means, by individuals outside of Monsanto.

12.    Monsanto has invested considerable time, effort, and expense in developing the Trade Secrets.  Monsanto spends an average of over $3 million per day on such developments.

13.    Monsanto used, and continues to use, reasonable and diligent efforts to maintain and protect its Trade Secrets, including requiring all persons with access to Trade Secrets to execute agreements with non-disclosure and other restrictive covenants, and restricting access to its premises to persons who show photographic identification and are escorted by Monsanto employees.

## Defendant's Employment Agreement With Monsanto

14.    On June 19, 2001, Defendant signed her Employment Agreement in St. Louis County, which constitutes a valid, enforceable contract.  The Agreement is attached hereto as Exhibit A and incorporated by reference as if fully set out herein.

6655362                                    - 4 -

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

15.     In the Agreement, Defendant agreed that she would be given access to Monsanto's confidential Trade Secrets and proprietary information (the "Confidential Information"), and that, in consideration for being given such access, she would not directly or indirectly use or disclose the Confidential Information.  Exhibit A, at 1.

16.     In exchange for Monsanto's providing her access to its Trade Secrets, Defendant agreed to grant Monsanto a "Non-Compete Option."  Under that option, if Monsanto provided her written notice of its decision to exercise the option, Defendant agreed that she would not, for a period of one year following the ending of her employment with Monsanto (the "Non-Compete Period"), "engage in or contribute my knowledge to any work or activity that involves a product, process, apparatus, service or development which is then competitive with or similar to a product, process, apparatus, service or development on which I worked or with respect to which I had access to Confidential Information" in the final five years of her employment with Monsanto.  Exhibit A, at 2.

17.     Monsanto agreed that, if it invoked the Non-Compete Option, it would "continue to pay [Defendant], during the Non-Compete Period, the same gross base salary (subject to taxes) [she] made during the last year of [her] employment with Monsanto, in monthly installments."  Exhibit A, at 2.

## Defendant's Access To Monsanto's Trade Secrets

18.     Defendant has a Ph.D. in plant breeding.

19.     Defendant began her employment with Monsanto in 1996 and has worked for Monsanto in the St. Louis area since 1999.  She has worked in a variety of functions across

6655362                                   - 5 -

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

Breeding, IT, and Biotechnology, including as a plant breeder developing commercial seed products.

20.     Over the last five years of her employment with Monsanto, Dr. Holmes held a number of roles that gave her access to Monsanto's Trade Secrets that would be invaluable in her role at Calyxt.  Significantly, the Trade Secret information she possesses can be used to the detriment of Monsanto on a worldwide basis regardless of her physical location.

21.     Most recently, Dr. Holmes worked as the Trait Analytics and Decision Science Lead within the Biotechnology organization from approximately November 9, 2015, to November 10, 2017.  This was a very high-level job with responsibilities critical to Monsanto's success in the seed and traits business.  It was global in scope, impacting Monsanto's products being sold on six continents, and involved all of Monsanto's core crops. Approximately 18 employees reported to her, directly or indirectly, and she controlled an annual budget over $4 million.

22.     Dr. Holmes's base salary at the time she resigned was over $160,000 per year.  In addition, she was eligible for annual incentive pay, stock options, and grants of restricted stock units that had the potential to add to her compensation considerably.

23.     Prior to her recent resignation, Dr. Holmes was a member of Monsanto's Extended Biotechnology Leadership Team ("EBLT"), the top 55 persons in the entire biotechnology organization.  She was also a member of Monsanto's Data Science Council, which includes persons from across Monsanto who meet to discuss confidential strategies and best practices for Monsanto's seed development, testing, and marketing business.

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

24.     To perform her job duties at Monsanto, Dr. Holmes had access to and learned highly confidential information about Monsanto's company-wide business planning, including its new product development and testing plans and its strategies regarding partnerships with third parties.

25.     The following examples illustrate the substantial Trade Secret knowledge Dr. Holmes was provided and regularly used in performing her employment duties at Monsanto during the last five years of her employment.  This list is not exhaustive.

A.     In her most recent role, Dr. Holmes helped lead Monsanto's effort to improve its seed testing process for all of its row crops.  As with any research and development project, seed testing is expensive, and a significant amount of time and money is spent on seeds that do not ultimately produce successful and commercially viable products.  The accuracy with which a company can select successful products earlier in the development process provides a competitive advantage.  Dr. Holmes has been responsible for developing Monsanto's new model for seed testing to allow it to meet this goal.  She is aware of what early test results, after 20 years of testing and after advanced analysis of the data collected over that time period, Monsanto has found to be the most reliable predictors of future success.  She has knowledge of this information for Monsanto's corn, soy, alfalfa, wheat, canola, and vegetable seeds.  She is also aware of how Monsanto has applied and intends to apply these best practices learned about one crop or trait to testing of another crop or trait.  This information is not shared publicly and is limited within Monsanto to persons with a business need to know these Trade Secrets.  A competitor could easily use this information to drastically improve its seed testing strategies.

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

B.     In addition to the testing process for seeds, Dr. Holmes has led Monsanto's efforts to improve its process for testing seed coatings that can be put on seeds to protect and increase yield.  For example, Monsanto is working on the development of seed coatings that have beneficial microbial organisms that will allow the plant to better absorb nutrients from the soil or to grow more rapidly.  As a member of the Microbial Leadership Team, Dr. Holmes is aware of Monsanto's advanced testing strategies with respect to such products that are again designed to streamline the process of selection of successful products.  Similarly, Dr. Holmes is aware of Monsanto's work on seed treatments that are designed to make the plant resistant to insects or parasites.  As just one example, she is aware of Monsanto's work on a product designed to reduce the damaging effects of nematodes, including what has worked and what has not worked as well.  All of this information would be very valuable to a Monsanto competitor.

C.     Dr. Holmes is also aware of which products Monsanto is pursuing and how those future products are progressing.  She regularly attended product advancement review sessions where the testing results and future testing plans were discussed for a large variety of products, giving her such knowledge.  For example, Dr. Holmes is aware of Monsanto's progress on new soybean seeds that are designed to produce higher yields.  She is aware of what is and is not working in that area.  She is aware of Monsanto's commercial strategy and progress on soybeans with more beneficial oil content.  A competitor could clearly use this information to advance its own research into competing products and to avoid wasting time and money on products that Monsanto has found are less likely to be successful.

D.     Dr. Holmes is aware of exact information about seed products that Monsanto is most aggressively pursuing and Monsanto's progress on those products.  For

6655362

- 8 -

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

instance, seed companies like Monsanto are working on developing soybean seeds that grow plants with more seed pods, hopefully increasing the number of beans that are produced per plant.  Dr. Holmes is aware of Monsanto's plans and testing results in this area and is aware of what has worked and not worked as well in testing.  She is also aware of what early testing results have proven to be most predictive of future testing results.  A competitor could use this information to quickly advance its own research and development on competing products.  Moreover, a competitor who learned Dr. Holmes's knowledge of Monsanto's product pipeline – what Monsanto thinks it can bring to market and when it can do so – could easily use this information to expedite its ability to bring a competing product to market where it is ahead of Monsanto and to limit its research and development where it is behind.

E.      As another example, Dr. Holmes is aware of Monsanto's progress on drought tolerant seed development.  Monsanto currently sells the world's first and only drought-tolerant biotechnology trait, and it is working on new and improved versions of this product.  Again, Dr. Holmes is aware of Monsanto's commercial strategy and progress of what has worked well and what has not worked as well, and what early testing results have proven to be most predictive of future testing results.  This information would be exceedingly valuable to a competitor attempting to develop a similar product concept.

F.      In addition to knowing what traits Monsanto has decided to focus on in early testing, Dr. Holmes is also aware of what genes Monsanto has discovered that impact those traits.  As a plant breeding scientist who has worked in seed breeding, Dr. Holmes understands the biotechnology of the genetic modification of the seeds.  Dr. Holmes also has knowledge of Monsanto's work in the area of predictive phenotyping, which is designed to allow Monsanto to

better determine how specific genetic changes will express themselves in the resulting plant.  Dr. Holmes would be able to use this information to advance a competitor's research and development program quite considerably.

        G.    Monsanto is currently involved in a gene editing initiative.  Gene editing is a relatively new process that will allow Monsanto and its competitors to more quickly develop and introduce desirable characteristics for seeds that it sells, which could significantly accelerate the process of new product development.  As discussed above, the speed of this process is important; as in many industries, in the agriculture industry it is a significant competitive advantage to be able to produce better products more quickly and efficiently than competitors and to be "first to market" with those products.  Dr. Holmes worked on and is familiar with Monsanto's highly confidential strategy in the area of gene editing.  She knows the relative strengths and weaknesses of Monsanto's program and Monsanto's current and planned work on this project.  She knows the specific genes that Monsanto has decided to target as the ones that can be altered, and she knows how Monsanto has prioritized its work on those genes based on its analysis of which ones present the best commercial opportunities.  The soybean plants with an increased number of pods per plant provides an example; Defendant knows which genes Monsanto is targeting to produce such seeds.  A competitor could use this highly confidential information to quickly advance important decision-making regarding its own gene editing strategy.  A competitor that gained knowledge of or used information about Monsanto's research emphasis and priority strategies could design ways to attempt to defeat those strategies, and could direct its efforts away from initiatives where Monsanto is relatively strong and toward efforts in areas where Monsanto is not as strong.

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

H.     As part of the gene editing process, Dr. Holmes is aware of Monsanto's strategy for establishing business relationships with and possibly acquiring third parties to enhance Monsanto's gene editing capabilities.  She is aware of the relative strengths and weaknesses of some of these third parties.  This highly confidential trade secret information, done pursuant to non-disclosure agreements, would be quite valuable to a competitor that was seeking to develop relationships with third parties in this area.  She is also aware of Monsanto's confidential strategies regarding the impact of gene editing on the process of applying for and obtaining regulatory approvals throughout the world.

I.     As a member of the EBLT, Dr. Holmes attended frequent meetings at which confidential presentations were made by her and others on Monsanto's biotechnology pipeline, its gene editing strategy, its strategy for regulatory approval of new seeds, and its next generation seed testing strategies.  All of this confidential, Trade Secret information would be extremely valuable to a Monsanto competitor.

### Defendant Accepts Employment With Calyxt

26.     On or about October 17, 2017, Defendant advised Monsanto of her intent to resign her employment and begin to work for Calyxt.  Monsanto requested that Defendant provide it with a copy of her Calyxt job description so that it could determine if it wished to invoke its Non-Compete Option.  Defendant failed to provide such a job description, but instead simply stated that she will work as Vice President of Program Management and that her "understanding is that the responsibilities of this role are administration of strategy and operations, ensuring that Calyxt adheres to documented product plans and performs the appropriate quality assurance across technology and commercial for their consumer centric food

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

and agricultural products." While quite vague, this description shows that she will be involved in working on Calyxt's products and processes that compete with Monsanto products and processes about which she has Trade Secret information in violation of her promises in the Agreement.

27.    Despite continued requests, Defendant has not produced a job description for her position with Calyxt.  She has, however, confirmed that her role would be similar to a job description found by Monsanto on Calyxt's website.  That job description, for the position of Crop Pipeline Lead, shows that Defendant would be responsible for "managing R&D project portfolio for the company key crops, such as soybean, wheat, and canola."  See Exhibit B.

28.    On October 23, 2017, Monsanto advised Defendant that it was invoking the Non-Compete Option.  Monsanto further advised Defendant that it would continue to pay her base salary for the duration of the one-year Non-Compete Period.

29.    Given that Defendant has knowledge of Monsanto's Trade Secrets regarding its corn, soy, canola, wheat, alfalfa, and vegetable seed products and processes, she is contractually prohibited from working on any of Calyxt's competing seed products or processes.

30.    There is considerable overlap between Monsanto's and Calyxt's seed pipelines. According to the Calyxt website, Calyxt is currently developing soybeans with more beneficial oil content and improved protein content, improved oil composition canola seeds, drought tolerant soybeans, improved yield soybeans, and herbicide tolerant soybeans, wheat, alfalfa, and canola seeds.  Monsanto is working on competing products for all of these.

31.    Given that Defendant has knowledge of Monsanto's Trade Secrets regarding its gene editing process, she is contractually prohibited from working on any of Calyxt's competing processes.  Calyxt's website makes clear that this is an area of emphasis for the company; the

website specifically states that "[i]n the near term, we are planning an expansion of our campus to enhance our gene-editing automation processes and develop a high-throughput discovery platform to identify new growth opportunities."

32.     As just one example, Defendant could jump start or advance Calyxt's gene editing capabilities by advising her new employer of the genes that Monsanto believes are most likely to provide the best opportunities for commercial products using that technology.

33.     Defendant has also advised Monsanto that she will be part of Calyxt's executive leadership team, reporting directly to its Chief Executive Officer.  As a member of the executive leadership team, it is expected that Defendant would be involved in meetings and provide input into decisions that address the business, operations, strategy, and research and development plans for the entire range of Calyxt's seed research and development and pipeline program, placing her in a position where her knowledge of Monsanto Trade Secret information would be very valuable to Calyxt.

## COUNT I – BREACH OF CONTRACT

34.     Monsanto realleges and incorporates as if fully set out herein paragraphs 1 through 34 of its Verified Petition.

35.     Defendant agreed to abide by the terms of the Agreement, including the non-competition and non-disclosure provisions contained therein.  Exhibit A.

36.     The non-disclosure and non-compete restrictions are reasonable and no greater than fairly required to protect and preserve Monsanto's legitimate protectable interests.

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

37.     Monsanto has complied with all of its obligations and conditions precedent under the Agreement.  It timely exercised its Non-Compete Option and stands ready and willing to continue to pay Defendant her last gross base salary (less taxes) during the Non-Compete Period.

38.     Defendant has accepted employment with Calyxt where she plans to work with products and processes similar to and competitive with the products and processes on which she worked and had access to confidential, Trade Secret information while with Monsanto, in violation of the Agreement.

39.     The work that Defendant contemplates doing for Calyxt would lead Defendant to disclose or utilize Confidential Information and Trade Secrets to Calyxt in violation of the Agreement.

40.     Defendant's conduct has violated and threatens to continue to violate the legitimate protectable interests of Monsanto, including, but not limited to, its right to protect its Trade Secrets, and has caused, and will continue to cause, serious and irreparable harm and injury to Monsanto.

41.     No legal remedy can adequately protect Monsanto from Defendant's violation of the Agreement in that monetary damages are unascertainable and, in any event, are, on information and belief, beyond Defendant's ability to satisfy.  If Defendant is permitted to violate the Agreement, Monsanto's competitive advantage and profitability will be irreparably injured. It will be impossible to measure that damage monetarily, as it will be impossible to determine exactly when Calyxt would have been able to bring competitive products to market without Defendant's assistance.

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

42.    Monsanto faces immediate and irreparable harm as a result of the conduct described in the Verified Petition.  Injunctive relief is necessary to afford Monsanto adequate relief.

43.    The harm to Monsanto if injunctive relief is not afforded substantially outweighs the harm to Defendant if such relief is granted.  As described above, the damage to Monsanto if it lost its competitive advantage over Calyxt is quite substantial.  Defendant, on the other hand, is free to work for many employers in many different industries so long as she does not violate the non-compete portion of the Agreement.  Defendant can also work in the advanced seed industry so long as she accepts a role in which she will not work on or contribute her knowledge to a product, process, or development that is competitive with those products, processes, or developments about which she worked on or acquired Trade Secrets during the last five years of her employment.  Finally, to the extent that Defendant does not have replacement employment, Monsanto will, during the one-year non-compete period, continue her Monsanto salary.

44.    There is a substantial likelihood that Monsanto will prevail on the merits.

45.    The public interest will be served by granting the requested relief in that the public policy supporting the ability to maintain confidentiality of Trade Secrets and Confidential Information will be upheld.  Monsanto has made substantial efforts to ensure the confidentiality of its Trade Secrets, as more fully described above.

46.    Monsanto's Trade Secrets derive substantial, independent economic value from not being generally known to the public or to Monsanto's competitors, who could obtain economic value from its use or disclosure.

WHEREFORE, Monsanto prays that:

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

A.     Monsanto be granted specific performance of the promises made by Defendant in the Agreement;

B.     Defendant be temporarily, preliminarily, and permanently enjoined and restrained from using or disclosing to any person any Trade Secrets and/or Confidential Information of Monsanto in violation of the Agreement;

C.     Defendant be temporarily, preliminarily and permanently enjoined and restrained, through the date of a preliminary injunction hearing, from engaging in any work or activity for Calyxt or any affiliate thereof that involves any product, process, apparatus, service or development competitive with or similar to any product, process, apparatus, service or development on which Defendant worked or with respect to which she had access to Confidential Information while at Monsanto as set forth in the Agreement, including but not limited to the Vice President of Program Management/Crop Pipeline Lead role at issue;

D.     Defendant be temporarily, preliminarily, and permanently enjoined and restrained from engaging in any other acts and conduct in violation of the Agreement and the Missouri Trade Secrets Act;

E.     Monsanto's costs of this action be assessed against Defendant; and

F.     Monsanto be granted such other and further relief as the Court may deem just and proper.

WHEREFORE, Plaintiff Monsanto Company prays for judgment in its favor and against Defendant for appropriate injunction relief, attorneys' fees, and any other relief that the Court deems just and proper.

6655362                          - 16 -

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

## COUNT II – VIOLATION OF MISSOURI
## TRADE SECRETS ACT

47.     Monsanto incorporates the allegations of paragraphs 1-46 above as if fully set forth herein.

48.     Monsanto's Trade Secrets derive substantial, independent economic value from not being generally known to the public or to Monsanto's competitors, who could obtain economic value from its use or disclosure.

49.     Monsanto has made substantial efforts to ensure the confidentiality of its Trade Secrets, as more fully described above.

50.     Defendant acquired Monsanto's Trade Secrets under circumstances giving rise to a duty to maintain its secrecy, both because of the confidentiality and other requirements of the Employment Agreement and her duty of loyalty as a high-level employee of Monsanto.

51.     Defendant has misappropriated and/or threatens to misappropriate Monsanto's Trade Secrets.

52.     Defendant's use and/or threatened use of Monsanto's Trade Secrets has caused and/or will cause irreparable injury to Monsanto and entitles Monsanto to temporary, preliminary, and permanent injunctive relief prohibiting Defendant from misappropriating (or enabling others to access or use) Monsanto's Trade Secrets, and requiring that Defendant turn over to Monsanto all materials constituting, reflecting or embodying such Trade Secrets. Monsanto has no adequate remedy at law, in that damages are extremely difficult to ascertain and, unless injunctive relief is granted as prayed for herein, Defendant has and will continue to injure Monsanto's existing and prospective business.

WHEREFORE, Monsanto prays that:

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

A.    Monsanto be granted specific performance of the promises made by Defendant in the Employment Agreement;

B.    Defendant be temporarily, preliminarily, and permanently enjoined and restrained from using or disclosing to any person any Trade Secrets and/or Confidential Information of Monsanto in violation of the Missouri Trade Secrets Act;

C.    Defendant be temporarily, preliminarily and permanently enjoined and restrained, through the date of a preliminary injunction hearing, from engaging in any work or activity that involves any product, process, apparatus, service or development competitive with or similar to any product, process, apparatus, service or development on which Defendant worked or with respect to which she had access to Confidential Information while at Monsanto as set forth in her Employment Agreement;

D.    Defendant be temporarily, preliminarily, and permanently enjoined and restrained from engaging in any other acts and conduct in violation of her Employment Agreement and the Missouri Trade Secrets Act;

E.    Monsanto's costs of this action be assessed against Defendant; and

F.    Monsanto be granted such other and further relief as the Court may deem just and proper.

WHEREFORE, Plaintiff Monsanto Company prays for judgment in its favor and against Defendant for appropriate injunction relief, attorneys' fees, and any other relief that the Court deems just and proper.

6655362                                    - 18 -

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

Respectfully submitted,

THOMPSON COBURN LLP


By: /s/ Clifford A. Godiner
    Clifford A. Godiner #33702
    One US Bank Plaza, Suite 2700
    St. Louis, Missouri 63101
    (314) 552-6433
    (314) 552-7000 (fax)
    cgodiner@thompsoncoburn.com

Attorney for Plaintiff
Monsanto Company

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

STATE OF MISSOURI          )
                           ) SS.
COUNTY OF ST. LOUIS        )

    I, Michael S. Hawbaker, after being duly sworn upon my oath, state that I have read the foregoing, and the information contained therein is true and accurate to the best of my knowledge, information, and belief.

_____
Michael S. Hawbaker

    SUBSCRIBED AND SWORN TO before me, a Notary Public, this 20th day of November 2017.

_____
Notary Public

My Commission Expires:

10-22-2021



Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

**17SL-CC04213**

A

# MONSANTO EMPLOYMENT AGREEMENT

In consideration of the compensation and other benefits of my employment and continued employment by Monsanto Company (as defined herein), I agree with Monsanto as follows:

## EMPLOYMENT BY MONSANTO

As used herein, Monsanto means Monsanto Company or one of its Subsidiaries, whichever is my employer. The term Subsidiary means any corporation, joint venture or other business organization in which Monsanto Company now or hereafter, directly or indirectly, owns or controls more than a fifty percent (50%) equity interest.

During my Monsanto employment I shall devote my working time and best efforts to the service of Monsanto and shall comply with the policies and procedures of Monsanto, including those relating to security and employee conduct, and I shall not engage in any business or technical activity, or plan any such activity, competitive with or in conflict with the business interests of Monsanto Company or any Subsidiary.

## CONFIDENTIAL INFORMATION

I acknowledge that Monsanto has certain non-public confidential business information, including engineering designs, drawings, formulae, calculations, data, or similar technical or project-related information; non-public client information, such as customer contact information, contract terms, bid information, customer listings, customer files, and information designated by clients (or others with whom Monsanto has a business relationship) to be kept confidential; sales plans, sales and earnings figures, pricing information, schedules of charges and rates, and other financial information; corporate strategies, marketing and other strategic plans; as well as personnel files and information Confidential Information). Confidential Information shall also include results derived from confidential evaluations of, and the confidential use or non-use by Monsanto Company or any Subsidiary of, technical or business information in the public domain.

In the course of my employment with Monsanto and because of the nature of my responsibilities, I have acquired and will continue to receive access to Monsanto s Confidential Information. I recognize and agree that this information is proprietary, highly sensitive and valuable. I further recognize that I occupy a position of trust and

confidence with respect to such Confidential Information.

I shall use my best efforts and diligence both during and after my Monsanto employment to protect the confidential, trade secret and/or proprietary character of all Confidential Information. I shall not, directly or indirectly, use (for myself or another) or disclose any Confidential Information for so long as it shall remain proprietary or protectible as confidential or trade secret information, except as may be necessary for the performance of my Monsanto duties and as may be required by courts, administrative or regulatory agencies.

I shall deliver promptly to Monsanto, at the termination of my employment, or at any other time at Monsanto s request, without retaining any copies, all documents and files (whether paper, digital, electronic or otherwise) that were supplied to me by Monsanto, or that were obtained or created pursuant to my duties for Monsanto, as well as reference books, text books, computer software, research lab books equipment, supplies and any other materials supplied to me by Monsanto or purchased with Monsanto s funds, and all copies thereof.

I understand that I am not to disclose to Monsanto Company or any Subsidiary, or use for its benefit, any confidential, trade secret or proprietary information of others, including any of my former employers.

Each of my obligations in this section shall also apply to the confidential trade secret and proprietary information learned or acquired by me during my employment from others with whom Monsanto Company or any subsidiary has a business relationship.

## NON-COMPETE OPTION

For a period of one year after my employment with Monsanto ends, I will (1) provide Monsanto with written notice of any employment or other engagement for compensation (such as providing services as a independent contractor or consultant) that I accept or undertake, (2) I will include in that notice the name and address of my New Employer, and the title of the position I will be taking (the New Employer Information ), and (3) I will provide Monsanto with this New Employer Information, and ensure that Monsanto receives it, at least 10 days prior to starting that new employment. Additionally, if I know who my New Employer will be at the time of my termination, I agree

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

that I will provide Monsanto the New Employer Information at that time. If I do not know who my new employer will be at the time my employment with Monsanto is terminated, I will provide the New Employer Information to Monsanto, in writing, as soon as I know it. New Employer means any entity or person by whom I become employed or otherwise engaged (for example as an independent contractor or consultant) to perform professional services, for compensation, at any time during the first year after leaving my employment with Monsanto, whether that engagement is my first engagement after leaving Monsanto or is a subsequent engagement.

For a period of seven (7) days (the Option Period) following Monsanto's receipt of my New Employer Information regarding any employer for whom I proposed to become employed during the first year following the termination of my employment with Monsanto, I hereby agree that Monsanto shall have the right to exercise a Non-Compete Option, as defined and provided for herein.

If Monsanto shall give me written notice, during the Option Period, that it is exercising its Non-Compete Option, I shall not, directly or indirectly (whether as owner, partner, consultant, employee or otherwise), at any time during the period of one year following termination of my employment with Monsanto (the Non-Compete Period), engage in or contribute my knowledge to any work or activity that involves a product, process, apparatus, service or development which is then competitive with or similar to a product, process, apparatus, service or development on which I worked or with respect to which I had accessed Confidential Information while at Monsanto at any time during the period of five years immediately prior to such termination (Competitive Work).

Should Monsanto exercise its Non-Compete Option, and so long as I am complying with the non-compete obligations set forth above, Monsanto shall continue to pay me, during the Non-Compete Period, the same gross base salary (subject to taxes) I had made during the last year of my employment with Monsanto, in monthly installments.

Regardless of whether Monsanto exercises its Non-Compete Option (and continuing after the expiration of the Non-Compete Period should Monsanto choose to exercise its option), I shall continue to be obligated under the other provisions of this Agreement, including the Confidential Information section of this Agreement not to use or to disclose Confidential Information so long as it shall remain proprietary or protectible as confidential or trade secret information.

Regardless of whether Monsanto exercises its Non-Compete Option, I agree that during my employment by Monsanto and for a period of one year thereafter, I shall not, directly or indirectly, induce, solicit, assist in the solicitation or inducement of, or

attempt to induce or solicit, a salaried employee of Monsanto Company or any of its Subsidiaries to terminate their employment with Monsanto or to accept any employment or affiliation involving Competitive Work.

## IDEAS, INVENTIONS OR DISCOVERIES

I shall promptly disclose to Monsanto all ideas, inventions or discoveries, whether or not patentable, which I may conceive or make, alone or with others, during my employment, whether or not during working hours, and which directly or indirectly

    (a) relate to matters within the scope of my duties or field of responsibility during my employment by Monsanto Company or it Subsidiaries; or

    (b) are based on my knowledge of the actual or anticipated business or interests of Monsanto Company or its Subsidiaries; or

    (c) are aided by the use of time, materials, facilities or information of Monsanto Company or its Subsidiaries.

I hereby assign to Monsanto, or its nominee, without further compensation, all of my right, title and interest in all such ideas, inventions or discoveries in all countries of the world.

Without further compensation but at Monsanto's expense, I shall give all testimony and execute all patent applications, rights of priority, assignments and other documents and in general do all lawful things requested of me by Monsanto to enable Monsanto to obtain, maintain, and enforce protection of such ideas, inventions and discoveries for and in the name of Monsanto, or its nominee, in all countries of the world. However, should I render any of these services following termination of my employment, I shall be compensated at a rate per hour equal to the basic salary I received from Monsanto at the time of termination and shall be reimbursed for reasonable out-of-pocket expenses incurred in rendering the services. (The compensation provided for in this section regarding services with respect to Ideas, Inventions, and Discoveries, should I be entitled to any such compensation under the terms hereunder, shall be separate from and additional to any compensation I might be entitled to under Non-Compete Option pursuant to the terms of that option as set forth herein).

I recognize that ideas, inventions or discoveries of the type described above conceived or made by me, alone or with others, within one year after termination of my employment are likely to have been conceived in significant part while employed by Monsanto. Accordingly, I agree that such ideas, inventions or discoveries shall be presumed to have been conceived during my Monsanto employment unless and until I have established the contrary by clear and convincing

2

evidence.

## OTHER AGREEMENTS

This Agreement shall be construed under the laws of the State of Missouri and shall be binding upon and enforceable against my heirs and legal representatives and the assignees of any idea, invention or discovery conceived or made by me. I agree and consent that this agreement is assignable by Monsanto and is enforceable by Monsanto s successors and assigns.

To the extent this Agreement is legally enforceable, it shall supersede all previous agreements covering this subject matter between me and Monsanto Company or its Subsidiaries, but shall not relieve me or such other party from any obligations incurred under any such previous agreement while in force.

If any provision of this Agreement is held invalid in any respect, it shall not affect the validity of any other provision of this Agreement. If any provision of this Agreement is held to be unreasonable as to time, scope or otherwise, it shall be construed by limiting and reducing it so as to be enforceable under then applicable law.

If I am transferred from the company which was my employer at the time I signed this Agreement to the employment of another company that is a Subsidiary of Monsanto Company or is Monsanto Company itself, and I have not entered into a superseding agreement with my new employer covering the subject matter of this Agreement, then this Agreement shall continue in effect, and my new employer shall be termed Monsanto for all purposes hereunder and shall have the right to enforce this Agreement as my employer. In the event of any subsequent transfer, my new employer shall succeed to all rights under this Agreement so long as such employer shall be Monsanto Company or one of its Subsidiaries and so long as this Agreement has not been superseded.

In the event of a breach or a threatened or intended breach of this Agreement by me, Monsanto shall be entitled, in addition to the damages it may prove and all other remedies otherwise available at law or in equity, to injunctions, both preliminary and final, enjoining and restraining such breach or threatened or intended breach, and I hereby consent to the issuance thereof without Monsanto being required to post any bond. In the event that Monsanto shall successfully enforce any part of this Agreement through legal proceedings, I agree to pay to Monsanto all costs and attorneys' fees reasonably incurred by it in that endeavor. Conversely, if Monsanto shall unsuccessfully attempt to enforce any part of this Agreement through legal proceedings, it agrees to pay me all the reasonable costs and attorneys fees incurred by me in defending against that effort. In the event that I am found to have breached any covenant in this agreement, the time period provided for in that covenant shall be deemed tolled (i.e., it will not begin to run) for so long as I was in violation of that covenant.

I acknowledge and agree that this Agreement is reasonable as to time and scope and activities prohibited, given Monsanto's need to protect its interests, and given the consideration provided to me hereunder.

I understand and agree that this Agreement is not a guarantee of continued employment or rate of compensation for any period. My employment is at will. This means I am free to terminate my employment at any time and for any reason, and that Monsanto retains the same rights. Nothing in this Agreement alters the at-will employment relationship between Monsanto and its employees.

I represent and warrant that (a) I am not a party to or bound by any agreement or contract, and am not subject to any other restriction (particularly, but without limitation in connection with any previous employment), which prevents me from entering into and performing my obligations under this Agreement, and (2) that I am able to perform my duties for Monsanto without using, disclosing or making reference to any confidential information belonging to another.

3

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

This Agreement is signed in duplicate, as of the _19th_ day of _June_
20_01_.


_Betty L. Holmes_
Signature of Employee


_Beth Holmes_
Typed Name of Employee


_Chesterfield Village, St. Louis_
Employment Location


1/326796.1


Date of Print: 4/2/01

4

**17SL-CC04213**

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

**HAWBAKER, MIKE S [AG/1005]**

| | |
|---|---|
| **From:** | HOLMES, BETH A [AG/1005] <beth.a.holmes@monsanto.com> |
| **Sent:** | Wednesday, October 11, 2017 10:57 AM |
| **To:** | HAWBAKER, MIKE S [AG/1005] |
| **Subject:** | RE: |

Yes, though I believe the role is still evolving a bit.

**From:** HAWBAKER, MIKE S [AG/1005]
**Sent:** Wednesday, October 11, 2017 10:12 AM
**To:** HOLMES, BETH A [AG/1005]
**Subject:**

Is this what you'll be doing?

1

**EXHIBIT**

tabbies

B

Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

**HAWBAKER, MIKE S [AG/1005]**

| | |
|---|---|
| **From:** | HAWBAKER, MIKE S [AG/1005] <mike.s.hawbaker@monsanto.com> |
| **Sent:** | Wednesday, October 11, 2017 10:11 AM |
| **To:** | HOLMES, BETH A [AG/1005] |
| **Attachments:** | CLX_CPL_201707.pdf |

Is this what you'll be doing?

1



Electronically Filed - St Louis County - November 20, 2017 - 02:35 PM

**Crop Pipeline Lead**
*Minneapolis, Minnesota, USA*

**About Calyxt**
Calyxt, Inc.is a fast-growing, consumer-oriented ag company that utilizes its innovative, patented TALEN® technology to usher in a new era of agriculture and develop crop products with healthier characteristics for consumers –all the while helping farmers and the food and agriculture industries reduce their environmental footprints in the context of climate change. Calyxt believes that agricultural technologies can have a profound and positive impact on humanity and is looking to build a team of like-minded individuals to share this passion for food and agriculture. Calyxt is located in Minneapolis-St. Paul, MN, and is a wholly owned subsidiary of Cellectis.

**Job Summary**
Calyxt is seeking a highly motivated and result-oriented **Crop Pipeline Lead** to join our Crop pipeline team. The successful candidate will have an opportunity to work in a team environment and interact with experts in genome engineering, molecular biology, and plant transformation with a mission of generating precise genome modifications in various crops.

**Job Duties and Responsibilities**
The individual will be responsible for managing R&D project portfolio for the company key crops, such as soybean, wheat and Canola.  Extensive knowledge in project management, molecular biology, tissue culture and/or gene editing are required.

- Coordinate and drive cross-functional teams to produce high quality results and ensure success of the projects
- Manage R&D projects to meet business objectives and timelines as specified at initiation
- Working closely with legal and commercial teams to identify new product ideas and file IP applications, define product concepts and develop critical path for each project
-  Follow and continuously improve the company project management processes to effectively report and communicate the project plan, deliverables, milestones, risks and solutions at the different levels within the organization.

**Required Qualifications**
- • Advanced degree (MS or PhD) in plant science or related field.
- • Demonstrated experience with a minimum of 5-10 years in project management and cross functional coordination track record in crop biotechnology industries.
- • Solid organizational and time management skills to ensure successful and timely documentation and completion of projects.
- • Ability to perform multiple tasks and prioritize effectively.
- • Ability to work with tight timelines in a rapid developing environment.
- • Strong scientific background with demonstrated proficiency in experimental design, problem-solving and analytical skills including data analysis and troubleshooting.
- • Solid understanding of plant transformation, gene editing, molecular biology, and plant breeding techniques.
- • Effective verbal and written communication skills and the ability to work in a team environment to achieve project goals.

**Preferred qualifications**
- • Knowledge and experience working with scientific public databases (NCBI, GenBank, Phytozome, Ensembl Plant etc.)
- • Proficiency working with molecular biology softwares to perform primer design, sequence alignment, and vector construction.

**Contact:** Please send resume and motivation letter to CLX_CPL_2017-07@calyxt.com

Electronically Filed - St Louis County - November 20, 2017 - 06:16 PM

In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

_Monsanto Company_
Plaintiff/Petitioner

vs.

_Dr. Beth Holmes_
Defendant/Respondent

November 20, 2017
Date

Case Number

Division

For File Stamp Only

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now  _Plaintiff Monsanto Company_ , pursuant
                          Requesting Party
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
_Bob Thomure, Metro One Investigations, Inc., 1210 Vandeventer Ave., St. Louis, MO 63110  314-517-2798_
Name of Process Server                         Address                                  Telephone

Name of Process Server                         Address or in the Alternative            Telephone

Name of Process Server                         Address or in the Alternative            Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:                                          SERVE:
_Dr. Beth Holmes_
Name                                            Name
_309 Bristol Ct._
Address                                         Address
_Ballwin, MO 63011_
City/State/Zip                                  City/State/Zip

SERVE:                                          SERVE:

Name                                            Name

Address                                         Address

City/State/Zip                                  City/State/Zip

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk                /s/ Clifford A. Godiner
                                                Signature of Attorney/Plaintiff/Petitioner
                                                _33702_
By _____              Bar No.
      Deputy Clerk                              _One US Bank Plaza, St. Louis, MO 63101_
                                                Address
                                                _(314) 552-6433_        _(314) 552-7000_
Date _____            Phone No.              Fax No.

CCADM62-WS   Rev. 08/16

Electronically Filed - St Louis County - November 20, 2017 - 06:16 PM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)    Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)    The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)    Appointments may list more than one server as alternates.

(B)    The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)    Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)    No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)    Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, http://www.stlouisco.com.  (LawandPublicSafety/Circuit/Forms).

(F)    This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

CCADM62-WS      Rev. 08/16



**IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI**

| Judge or Division:<br>GLORIA CLARK RENO | Case Number:  17SL-CC04213 |
|---|---|
| Plaintiff/Petitioner:<br> MONSANTO COMPANY | Plaintiff's/Petitioner's Attorney/Address<br>CLIFFORD ALAN GODINER<br>ONE US BANK PLAZA<br>ST LOUIS, MO 63101 |
| vs. | |
| Defendant/Respondent:<br>BETH HOLMES DR | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

### Summons in Civil Case

The State of Missouri to: DR.  BETH HOLMES

Alias:

309 BRISTOL CT<br>
BALLWIN, MO  63011

**COURT SEAL OF**

**ST. LOUIS COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

29-NOV-2017
Date                                              Clerk

Further Information:
JJ

#### Sheriff's or Server's Return

Note to serving officer:  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____                          _____
Printed Name of Sheriff or Server                          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on _____ (date).

My commission expires: _____
Date                                   Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $  10.00 |
| Mileage | $_____ (____ miles @ $ _____ per mile) |
| Total | $_____ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7-99) SM30 (SMCC) *For Court Use Only:* **Document Id # 17-SMCC-9613**          1 of 1          Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo